## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **NAKENIA JOHNSON** | **CIVIL DOCKET NO. 6:21-CV-03769** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **IBERIA MEDICAL CENTER FOUNDATION** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### <u>MEMORANDUM RULING</u>

Plaintiff Nakenia Johnson ("Plaintiff") filed the above-captioned matter on October 26, 2021, pursuant to this Court's federal question jurisdiction. [Doc. 1, ¶ 3]. Plaintiff's Second Amended Complaint (the "Complaint") asserts claims for "Race Discrimination, Wrongful Termination, and Retaliation in Violation of Title VII of the Civil Rights Act and 42 U.S.C. §1981" arising from her employment with Defendant, Iberia Parish Hospital Service District No. 1., d/b/a Iberia Medical Center ("IMC" or "Defendant"). [Doc. 29, p. 8].

Now before the Court is Defendant's MOTION FOR SUMMARY JUDGMENT (the "Motion") wherein Defendant requests the dismissal of all claims. [Doc. 40, p. 1]. After careful consideration, and for the reasons set forth below, the Court GRANTS Defendant's Motion.

### FACTUAL BACKGROUND

Defendant hired Plaintiff, a black female, as a Registered Nurse ("RN") in November 2007. [Doc. 29, ¶ 11]. Plaintiff was promoted soon thereafter and, from 2007 to 2019, worked as both an Intensive Care Unit ("ICU") Charge Nurse and House Supervisor. *Id.* Defendant promoted Plaintiff again and, in July 2019,

transferred Plaintiff to a temporary position as the Interim Manager of the Medical-Surgical Department.  [Doc. 29, ¶ 13]; [Doc. 30, ¶¶ 13–14].  Several months later, Plaintiff applied for the permanent position of Medical-Surgical Manager.  [Doc. 29, ¶ 15]; [Doc. 30, ¶ 15].  Plaintiff was ultimately not selected for the managerial position and returned to her previous position as an ICU Charge Nurse and House Supervisor.[1]  [Doc. 29, ¶ 17]; [Doc. 30, ¶ 17].

At Defendant's request, Plaintiff applied for an Intensive Care Unit ("ICU") Manager position in February of 2021.  [Doc. 29, ¶ 18]; [Doc. 30, ¶ 18].  Plaintiff completed the application and selection process but was again not selected for promotion.  [Doc. 29, ¶ 29]; [Doc. 30, ¶ 18].  Defendant instead promoted Marie Delcambre, one of Plaintiff's white co-workers.  [Doc. 40-4, p. 93]; [Doc. 47, p. 10].

Plaintiff continued working as a Charge Nurse until Defendant terminated her employment on June 1, 2021.  [Doc. 48-2, pp. 178-179]; [Doc. 40-4, p. 54].  Plaintiff's termination letter explained that her discharge was the result of "[r]epeated incidents

---

[1]     The process employed by Defendant during the relevant timeframe was threefold. First, qualified applicants were interviewed by Defendant's Chief Nursing Officer and Vice President of Nursing, Sandy Morein ("Morein").  [Doc. 49-1, pp. 9, 26]; [Doc. 47, p. 19].  During this interview, Morein asked questions designed to evaluate the applicants' qualifications, experience, and overall fitness for the position.  [Doc. 49-1, p. 29]; [Doc. 47, p. 19].

After interviewing each applicant, Morein submitted the top candidates to a five-member peer review panel.  [Doc. 49-1, pp. 28–29]; [Doc. 47, pp. 18–19].  The review panel then conducted a second interview, asking each candidate predetermined questions and scoring the candidates numerically based on their responses.  [Doc. 49-1, p. 42]; [Doc. 40-4, pp. 78–87].  When considering candidates for a managerial position, this panel typically consisted of a frontline staff member, a human resources employee, a case manager, an ICU department manager, and an employee who would otherwise work closely with the chosen candidate. [Doc. 49-1, pp. 35-45].

After interviewing each final candidate, the panel issued a recommendation to Morein, who made the ultimate employment decision.  [Doc. 49-1, p. 74].  Morein stated in her deposition that she has never deviated from a peer review panel's recommendation.  *Id.*

of inappropriate and rude communications and behavior" that "[violated] Iberia Medical Center standards of behavior[,] including [Plaintiff's] obligations to respect and positively manage her coworkers." [Doc. 40-4, p. 54].

## I. <u>Procedural History</u>

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 8, 2021, and received her "right to sue" letter on July 29, 2021.[2] [Doc. 40-4, p. 1]; [Doc. 29, ¶ 8]; [Doc. 30, ¶ 8].  On October 26, 2021, Plaintiff instituted this action against Defendant, claiming generally that Defendant engaged in "Race Discrimination, Wrongful Termination, and Retaliation in Violation of Title VII of the Civil Rights Act and 42 U.S.C. §1981[.]"  [Doc. 1, p. 7].  With Defendant's consent, Plaintiff filed her Second Amended Complaint on August 30, 2022.  *See generally* [Doc. 29].

---

[2]    Plaintiff's EEOC complaint alleges that Defendant engaged in both racial discrimination and retaliation from February 1, 2021, through June 1, 2021.  [Doc. 40-4, pp. 1–2].  In the "Particulars" section of her complaint, Plaintiff claims:

> I was hired by [Defendant], most recently as a PRN House Supervisor/Registered Nurse on November 5, 2007.  I have been discriminated against because of my Race-Black/African American, in that I was discharged after asking Carol James, Second Floor Medical Surgical Director, to remove my name from the Shift Wizard Program entry; whereas Brandy Bergeron (CAU), PRN House Supervisor/Registered Nurse, was demoted for modifying other personnel entries she put into the same Shift Wizard Program.  I was retaliated against by being discharged on June 1, 2021, after filing a report on March l, 2021 to Ms. Sandy Morein (CAU), Chief Nursing Officer, and Meagan Bourque (CAU), Human Resources, that the hiring panel which consisted of 5 Caucasian females was not diverse, causing me to not be selected, because the panel was bias[ed].
>
> According to the company, I was discharged for repeated incident of inappropriate communications and behavior with regard to fellow coworkers resulted in numerus complaints, in violation of standards of behavior.
>
> I believe I have been discriminated in violation of Title VII of the Civil Rights Act of 1964, as amended.

Defendant filed the instant Motion on November 23, 2022, seeking dismissal of all claims.  [Doc. 40].  Plaintiff has filed an Opposition and the Defendant a Reply. *See* [Docs. 47, 56].  The Motion is now ripe for ruling.

## LAW AND ANALYSIS

## II.  Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party."  *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery.  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).  If the movant fails to meet this burden, the court must deny the moving party's motion for summary judgment.  *Id.*

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* (citing *Celotex*, 477 U.S. at 323).  In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party.  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  There is no genuine issue for trial – and a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]"  *Id*.

## III.    <u>Title VII Standard of Review</u>

Plaintiff asserts employment discrimination claims against her former employer, IMC, under Title VII and 42 U.S.C. § 1981.  Because Plaintiff's § 1981 claims may not be asserted against this defendant, the Court need only address Plaintiff's allegations within the context of Title VII.[3]

In cases such as this one, where there is no direct evidence of discrimination,[4] a plaintiff's Title VII claim is governed by the *McDonnell Douglas* burden-shifting framework.  *Cardiel v. Apache Corp.,* 559 F. App'x 284, 288 (5th Cir. 2014).  Under *McDonnell Douglas*, a plaintiff "must first demonstrate a *prima facie* case [of discrimination], after which the burden of production shifts to the [employer] to proffer a legitimate nondiscriminatory reason for its decision." *Assariathu v. Lone Star Health Mgmt. Assocs., L.P.,* 516 F. App'x 315, 319 (5th Cir. 2013).  If the

---

[3]    Plaintiff's Complaint asserts several claims arising under 42 U.S.C. § 1981.  *See* [Doc. 29, ¶¶ 44–49].  However, because Defendant is a political subdivision of the state of Louisiana, *see* La. R.S. § 46:1064, Plaintiff's employment discrimination claims are not cognizable under § 1981.  *See, e.g., Bradford v. Jackson Par. Pol'y Jury,* 2019 WL 1966139, at *7 (W.D. La. Apr. 17, 2019), *report and recommendation adopted sub nom. Bradford v. Police Jury of Jackson Par.*, 2019 WL 1966131 (W.D. La. May 2, 2019) (citing *Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 462 (5th Cir. 2001) and *Hampton Co. Nat. Sur., LLC v. Tunica Cnty., Miss.*, 543 F.3d 221, 224 (5th Cir. 2008)).  Plaintiff's Opposition does not address this issue.  *See generally* [Doc. 47].  Accordingly, insofar as Plaintiff's Complaint asserts claims arising under § 1981, those claims are dismissed.

[4]    "Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption."  *Brown v. E. Mississippi Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir. 1993).

employer carries its burden of production, the plaintiff must "then offer sufficient evidence to create a genuine issue of material fact" as to whether the employer's proffered reason is pretextual.  *Id.*

Here, Plaintiff asserts three separate Title VII claims under the *McDonnell Douglas* framework: (i) a failure-to-promote claim arising from Plaintiff's ICU Manager application in February 2021; and (ii) retaliation and race discrimination claims arising from Plaintiff's discharge in June 2021.  *See generally* [Doc. 47].  The Court addresses each in turn.[5]

## IV.   Failure-to-Promote

### A. Scope of Plaintiff's EEOC Complaint

As a threshold matter, Defendant contends that Plaintiff's failure-to-promote claim relating to her ICU Manager application in February 2021 falls outside the scope of Plaintiff's EEOC complaint and that she has therefore failed to exhaust her administrative remedies as to this claim.  [Doc. 40-2, pp. 11, 16].

Before filing a Title VII claim in federal court, a private sector employee must "exhaust their administrative remedies" by filing an administrative charge with the

---

[5]      Plaintiff's Complaint also asserts Title VII claims that were either untimely or related to allegations outside the scope of her EEOC complaint.  *See* [Doc. 29, ¶¶ 15–20, 21–28, 37].  Plaintiff concedes that "discovery has not borne out" these claims and does not oppose their dismissal.  *See* [Doc. 47, p. 10, n. 33].  Accordingly, summary judgment is appropriate as to Plaintiff's "hostile work environment claim, her claim for race discrimination as to the 2020 denial of promotion to the Medical Surgical Manager position, her claims as to any event which occurred prior to August 12, 2020, her race discrimination claim regarding acts of Dr. O'Brien, her claim of racial harassment, her claim that IMC failed to respond to her February 2020 grievance, and the denial of her tuition reimbursement request."  *Id.*

EEOC.[6] *Scott-Benson v. KBR, Inc.,* 826 F. App'x 364, 367 (5th Cir. 2020).[7]   After completing this process, the plaintiff may only assert Title VII claims "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *Id.*; *see also Cargo v. Kansas City S.,* 2009 WL 3010835, at *2 (W.D. La. Sept. 16, 2009) ("In order for a particular alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge[.]") (internal quotations omitted).

Although the focus of Plaintiff's EEOC complaint references her termination from IMC, it also explicitly references an interview panel that she claims

---

[6]      Although Defendant is a political subdivision of Louisiana and therefore outside the purview of § 1981, Plaintiff is still considered "private sector employee" for the purposes of Title VII.   *See* 42 U.S.C. § 2000e(f) (2022) ("The term 'employee' means an individual employed by an employer … includ[ing] employees subject to the civil service laws of a State government, governmental agency or political subdivision."); *Jones v. City of Monroe*, 2019 WL 5488603, at *9 (W.D. La. Oct. 8, 2019), *report and recommendation adopted,* 2019 WL 5491922 (W.D. La. Oct. 24, 2019) (treating employees of the City of Monroe as "private sector employees" under Title VII); *accord*, *Bradford v. Jackson Par. Pol'y Jury,* 2019 WL 1966139 (W.D. La. Apr. 17, 2019), *report and recommendation adopted sub nom. Bradford v. Police Jury of Jackson Par.,* 2019 WL 1966131 (W.D. La. May 2, 2019).

[7]      The Fifth Circuit has observed that "competing policies underlie judicial interpretation of the exhaustion requirement."   *See McClain v. Lufkin Industries, Inc.,* 519 F.3d 264, 273 (5th Cir. 2008) ("On one hand, the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship … [but] [o]n the other hand, the primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC … [and] achieve non-judicial resolution of employment discrimination claims.") (internal quotations omitted).   A reconciliation of these policies requires the Court to "construe[] an EEOC complaint broadly" while remaining mindful of "the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination." *Miller v. Upper Iowa Univ.,* 2021 WL 5232558, at *4 (W.D. La. Nov. 9, 2021) (citing *McClain* 519 F.3d at 273 (5th Cir. 2008).

discriminated against her because of her race.[8]  The EEOC charge also indicates that Plaintiff allegedly suffered racial discrimination as early as February 1, 2021, in or around the time Plaintiff interviewed for the ICU Manager position.  [Doc. 40-4, p. 1].  Plaintiff's EEOC complaint therefore specifically identifies a biased promotional process occurring within the same timeframe as alleged in the Complaint.  Because the factual basis for Plaintiff's failure-to-promote claim forms the predicate for Plaintiff's retaliation claim, an EEOC investigation into the February 2021 promotional process could "reasonably be expected to grow" out of the allegations in Plaintiff's EEOC complaint.  *See Stone v. Louisiana Dept. of Revenue,* 590 Fed. App'x. 332, 338 (5th Cir. 2014) (unpublished) (a plaintiff may assert claims based upon "any kind of discrimination like or related to the [EEOC] charge's allegations") (citing *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir.1983)); *Herster v. Bd. of Supervisors of Louisiana State Univ.,* 72 F. Supp. 3d 627, 643 (M.D. La. 2014) ("Given the wording of [plaintiff's] claim, which states that she was denied promotion in favor of a man … it is reasonably foreseeable that the investigation would explore events prior to the promotion[.]").  The Court therefore finds that Plaintiff has exhausted her administrative remedies with regard to her failure-to-promote claim.

## B. Plaintiff's *Prima Facie* Case

To establish a *prima facie* failure-to-promote claim, a plaintiff must demonstrate: (i) she was a member of a protected class; (ii) she was qualified for the

---

[8]     Plaintiff's EEOC complaint reads, "I was retaliated against by being discharged … after [complaining to hospital administrative staff] that the hiring panel which consisted of 5 Caucasian females was not diverse, causing me to not be selected, because the panel was [biased]."  [Doc. 40-4, p. 1].

position sought; (iii) she was not promoted; and (iv) that her employer instead selected a candidate outside of plaintiff's protected class. *Riney v. Lockheed Martin Corp.*, 831 F. App'x 698, 701 (5th Cir. 2020) (citing *Blow v. City of San Antonio,* 236 F.3d 293, 297 (5th Cir. 2001)). The record indicates – and Defendant does not dispute – that Plaintiff has established each element of her *prima facie* burden. *See* [Doc. 40-2, pp. 17–18].

## C. <u>Defendant's Legitimate Non-Discriminatory Reason</u>

Because Plaintiff has established her *prima facie* claim, there is an inference that unlawful discrimination occurred. *Riney*, 831 F. App'x at 701–02 (5th Cir. 2020). Defendant must rebut this inference by "proffer[ing] a legitimate, nondiscriminatory reason for hiring the successful candidate." *Id.*

Here, Defendant explains that it did not select Plaintiff for the ICU Manager position for three reasons: (i) Marie Delcambre had qualifications that were superior to Plaintiff's qualifications; (ii) Marie Delcambre possessed a "better managerial temperament and [had] better people skills than [Plaintiff];" and (iii) Marie Delcambre performed better than Plaintiff during the peer interview process.[9] [Doc.

---

[9]      Citing *Alvarado v. Texas Rangers*, 492 F.3d 605 (5th Cir. 2007), Plaintiff argues that her low peer interview score does not qualify as a legitimate, nondiscriminatory justification because Defendant "has neglected to provide any clear and reasonably specific basis for the assessment of plaintiff's interview performance." [Doc. 47, p. 12]. The Court disagrees.

In *Alvarado*, the Fifth Circuit considered a failure-to-promote claim involving a promotional process that depended in large part upon a candidate's interview score.  492 F.3d, at 616–17. There, the court concluded that defendant's "legitimate, nondiscriminatory reason for [plaintiff's] non-selection … was insufficient to satisfy [its] burden of production" because the defendant offered no evidence explaining *why* the plaintiff was scored lower than the successful candidates, all of whom were men.  *See id.* ("[Defendant] has offered *neither an explanation nor evidence* of how or why the interviewers arrive at these scores … Without some indication of the factual basis or specific reasons for [plaintiff's] interview score, the score says nothing about whether her [non-promotion] was the product of intentional sex

40-2, p. 18]; [Doc. 40-6, p. 8].  Because there is competent summary judgment evidence supporting each of Defendant's proffered reasons, Defendant has sufficiently rebutted the discriminatory inference created by Plaintiff's *prima facie* case.  *See Roberson-King v. Louisiana Workforce Comm'n, Off. of Workforce Dev.,* 904 F.3d 377, 381 (5th Cir. 2018) ("[T]he burden to present a non-discriminatory reason is one of production, not persuasion; it can involve no credibility assessment.") (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)) (internal quotations omitted).

### D. Evidence of Pretext

If the employer comes forth with a "legitimate, nondiscriminatory reason" for hiring the successful candidate, the burden then shifts to the plaintiff to "establish a genuine issue of material fact as to whether the defendant's explanation is merely pretext for a discriminatory purpose."  *Riney,* 831 F. App'x at 701–02 (citing *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)).  In the failure-to-promote context, a plaintiff may establish pretext by demonstrating they were "clearly better qualified (as opposed to merely better or as qualified)" than the chosen employee.

---

discrimination.") (emphasis added).  Here, however, Defendant has produced: (i) the facially neutral questions the peer review panel asked each candidate; (ii) brief summaries of the candidates' answers; and (iii) handwritten notes from each panelist that at least partially explain why they awarded a given score.  *See* [Doc. 40-4, pp. 62–72] (the panel's scoring of Marie Delcambre); *id.,* at pp. 78–88 (the panel's scoring of Plaintiff).  Because this is "not a case where the [employer] relies on nothing more than a[n] unexplained interview score," Defendant has carried its burden of production.  *See Joseph v. City of Dallas,* 277 F. App'x 436, 439, 441 (5th Cir. 2008) ("The employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be."); *Inocencio v. Montalvo,* 774 F. App'x 824, 831 (5th Cir. 2019) (holding *Alvarado* inapplicable because "the [interview] panel's procedure is extensively documented in the summary judgment record, which includes records of the job description, panel questions, the master score sheet, interviewee score sheets, and comments/observations from the panelists."); *Whitfield v. Wood Grp. PSN, Inc.*, 2019 WL 4213412, at *11 (E.D. La. Sept. 5, 2019).

*McDaniel v. Nat'l R.R. Passenger Corp.,* 705 F. App'x 240, 246 (5th Cir. 2017).  The Fifth Circuit has observed that "the bar is set high for this kind of evidence" and that, standing alone, "differences in qualifications are generally not probative evidence of discrimination" unless "the qualifications are so widely disparate that no reasonable employer would have made the same decision[.]"  *Id.* (citing *Moss*, 610 F.3d at 923).  A plaintiff can show that she is "clearly better qualified" by presenting "evidence from which a jury could conclude that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Id.*

Here, Plaintiff cannot show she was "clearly better qualified" than Marie Delcambre.  The undisputed summary judgment evidence establishes that: (i) Plaintiff and Marie Delcambre had comparable educational backgrounds and prior nursing experience; (ii) Marie Delcambre had more significant managerial experience than Plaintiff; and (iii) the peer review panel unanimously recommended Marie Delcambre for the ICU Manager position.  *See* [Doc. 40-2, p. 19]; [Doc. 47, p. 15, n. 39].  Simply put, Defendant's selection of Marie Delcambre over Plaintiff falls well within the "realm of reasonable business judgments," which necessarily means that Plaintiff cannot establish pretext. *See Roberson-King v. Louisiana Workforce Comm'n, Off. of Workforce Dev.,* 904 F.3d 377, 382 (5th Cir. 2018).  Accordingly, summary judgment is appropriate as to Plaintiff's failure-to-promote claims.[10]

---

[10]     In an attempt to survive summary judgment, Plaintiff argues that: (i) the scores submitted to Morein by the peer review panel "should not be weighed against [Plaintiff]" because questions related to Plaintiff's qualifications are "inherently factual issue[s] which

## V.   Retaliation

### A.   Plaintiff's *Prima Facie* Case

Defendant also seeks summary judgment on Plaintiff's Title VII retaliation claims arising from her June 2021 termination.   Using only circumstantial evidence, a plaintiff makes a *prima facie* case of retaliation by establishing that: (i) the plaintiff engaged in an activity protected by statute; (ii) her employer took an adverse employment action against her; and (iii) a causal connection exists between the protected activity and the adverse action.   *McKinney v. Sheriffs Off. Rapides Par.*, 2021 WL 1083979, at *10 (W.D. La. Mar. 19, 2021) (citing *Feist v. Louisiana, Dept. of*

---

should not be assessed on a motion for summary judgment;" and (ii)  "[Defendant's] promotion process is overly subjective."   [Doc. 47, p. 15].   Neither argument is persuasive.

First, the question of whether Plaintiff is "clearly better qualified" than Marie Delcambre is an issue that can be appropriately resolved on a motion for summary judgment. *See, e.g., McDaniel v. Nat'l R.R. Passenger Corp.,* 705 F. App'x 240, 245 (5th Cir. 2017); *Nunley v. City of Waco,* 440 F. App'x 275, 279–280 (5th Cir. 2011); *Roberson-King v. Louisiana Workforce Comm'n, Off. of Workforce Dev.*, 904 F.3d 377, 381 (5th Cir. 2018); *Riney v. Lockheed Martin Corp.*, 831 F. App'x 698, 702 (5th Cir. 2020).  Here, the record indicates that Marie Delcambre was at least as qualified as Plaintiff for the ICU Manager position.   *Compare* [Doc. 40-4, pp. 75–76] (Plaintiff's resume) *with id.* at pp. 59–62 (Marie Delcambre's resume).   And Plaintiff has failed to produce any evidence that her qualifications were such that "no reasonable person . . . could have chosen [Marie Delcambre] over [Plaintiff]."   *See McDaniel*, 705 F. App'x at 246 ("Employment discrimination laws are not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.") (internal quotations omitted); *Roberson-King*, 904 F.3d at 381; (when considering the issue of pretext, a court may not "engage in second-guessing [] an employer's business decisions."); *Nunley*, 440 F. App'x at 279–280.

Second, Plaintiff contends that summary judgment is inappropriate because the peer review panel's "totally subjective opinions do not preclude race discrimination."   [Doc. 47, p. 21]. Plaintiff misstates her burden.   To establish pretext, Plaintiff must demonstrate that Defendant's decision to promote Marie Delcambre over Plaintiff was "motivated by discriminatory animus," not that Defendant employed an inadequate promotional process. *See Whitfield v. Wood Grp. PSN, Inc.,* 2019 WL 4213412, at *13 (E.D. La. Sept. 5, 2019) ("Management does not have to make proper decisions, only non-discriminatory ones."). Moreover, even assuming that Defendant's promotional process is "overly subjective," "the mere fact that an employer uses subjective [promotional] criteria is not sufficient evidence of pretext."   *Riney v. Lockheed Martin Corp.*, 831 F. App'x 698, 703 (5th Cir. 2020).

*Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).[11]  The employer is then presumed to have retaliated against the plaintiff and must "articulate a legitimate, nonretaliatory reason for the challenged employment action." *Quintana v. Fujifilm N. Am. Corp.*, 96 F. Supp. 3d 601, 619 (N.D. Tex.), *aff'd*, 628 F. App'x 252 (5th Cir. 2015) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir.2007)). If the employer carries its burden of production, the discriminatory inference created by plaintiff's *prima facie* case disappears, and "summary judgment is appropriate unless the plaintiff raises a genuine dispute of material fact that the [employer]'s rationale is pretextual." *Id.*

### i.   Protected Activity

An employee engages in an activity protected by Title VII if she either: (i) opposes any practice made an unlawful employment practice by Title VII; or (ii) makes a charge, testifies, assists, or participates in any manner in investigation, proceeding, or hearing under Title VII. *Wilson v. Delta State Univ.*, 143 F. App'x 611, 613 (5th Cir. 2005) (citing 42 U.S.C. § 2000e–3(a).  An informal complaint to an employer may constitute a protected activity within the meaning of Title VII if it "reference[s] a discriminatory employment practice[.]" *See Amanduron v. Am. Airlines*, 416 F. App'x 421, 424 (5th Cir. 2011); *Randolph v. St. Tammany Par. Sch. Bd.*, 2021 WL 1967479, at *18 (E.D. La. May 17, 2021).

---

[11]   Although *McKinney* considered claims arising under the ADA, the *prima facie* elements of a retaliation claim are the same under both Title VII and the ADA.  *See McKinney*, 2021 WL 1083979 at *10, n.12.

On March 1, 2021, after unsuccessfully applying for the ICU Manager position, Plaintiff sent an email to Defendant's Human Resources Manager and claimed that Defendant's promotional process was "flawed and [biased]" because the peer review panel that interviewed her and Marie Delcambre was composed entirely of white women.[12]  [Doc. 40-4, pp, 88–89].  Because Plaintiff's email arguably referenced a discriminatory act (*i.e.*, the appointment of an interview panel designed to unlawfully discriminate against her based on her race), the Court finds that Plaintiff has established the first element of her *prima facie* retaliation claim.  *See Rosette v. PNK (Baton Rouge) P'ship,* 2018 WL 3041190, at *5 (M.D. La. June 19, 2018) (finding protected activity when plaintiff told human resources her supervisor preferred her coworker "because [her coworker] was white"); *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (protected activity "must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue.").

### ii.   Causality

A *prima facie* retaliation claim next requires that "a causal connection exists between the protected activity and the adverse [employment] action."[13]  *Aguillard v. Louisiana Coll.*, 824 F. App'x 248, 251 (5th Cir. 2020), *cert. denied*, 208 L. Ed. 2d 536,

---

[12]    Plaintiff also verbally complained to Sandy Morein about the diversity of the peer review panel that interviewed her and Marie Delcambre on February 25, 2021.  [Doc. 40-2, p. 30]; [Doc. 47, p. 29].

[13]    Defendant does not dispute that Plaintiff's termination constitutes an adverse employment action for the purposes of a Title VII retaliation claim.  *See generally* [Doc. 40]; *see also Carpenter v. Haaland,* 2021 WL 1198261, at *6 (E.D. La. Mar. 30, 2021) (discharge considered an "adverse employment action" for plaintiff's *prima facie* retaliation case because "[t]ermination would likely dissuade a reasonable worker from willingly participating in an investigation on workplace misconduct.")

141 S. Ct. 1079 (2021).  Close timing between an employee's protected activity and an adverse employment action can be sufficient evidence of causality so long as the temporal proximity is "very close."  *Id.*

Here, Plaintiff emailed Defendant's Human Resources Manager on March 1, 2021.  [Doc. 40-4, pp, 88–89].  Defendant terminated Plaintiff's employment on June 1, 2021, approximately three months after Plaintiff engaged in a protected activity.  [Doc. 48-2, pp. 120, 178-179]; [Doc. 40-4, p. 54].  The Court finds that this temporal proximity is sufficient to establish the third element of Plaintiff's *prima facie* retaliation claim.  *See Feist v. La. Dep't of Justice, Office of the Att'y Gen.,* 730 F.3d 450, 454 (5th Cir. 2013) (holding that "[w]hile a four-month gap may be sufficient evidence of causation, a five-month gap is too long absent other evidence."); *Rosette v. PNK (Baton Rouge) P'ship,* 2018 WL 3041190, at *6 (M.D. La. June 19, 2018) ("[A] time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes.") (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)).

## B. Defendant's Nonretaliatory Justification

Because the evidence establishes a *prima facie* case of retaliation, Defendant is presumed to have retaliated against Plaintiff.  *McInnis v. Alamo Cmty. College Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000).  Defendant must now articulate a "legitimate ... nonretaliatory reason" explaining its adverse employment action.  *Willis v. Cleco Corp.*, 2011 WL 4443316, at *8 (W.D. La. Sept. 22, 2011).  Defendant's burden is "only one of production, not persuasion, and involves no credibility assessment."  *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir.2007).

Here, Defendant argues and submits evidence that Plaintiff was discharged after receiving multiple internal complaints regarding both Plaintiff's work performance and her attitude towards other nurses.[14] [Doc. 40-2, pp. 21–24]. Defendant has thus carried its burden of production. *See Godfrey v. Honeywell Int'l, Inc.,* 2022 WL 495040, at *8 (W.D. La. Feb. 17, 2022) ("[P]oor performance is a legitimate, non-discriminatory reason for termination.") (citing *Watkins v. Tregre,* 997 F.3d 275, 282 (5th Cir. 2021)).

### C. Evidence of Pretext

Given Defendant's proffered non-discriminatory reason for terminating Plaintiff, Plaintiff must establish that her protected activity constituted a "but-for cause of the adverse employment decision" by showing that Defendant's non-discriminatory justification is pretextual. *Saketkoo v. Administrators of Tulane Educ. Fund,* 31 F.4th 990, 1001–02 (5th Cir. 2022) (internal quotations omitted). At

---

[14]     In the two years preceding her discharge, 13 of Plaintiff's co-workers filed more than 20 written and verbal complaints with Plaintiff's superiors. *See, e.g.,* [Doc. 40-4, p. 29] (one co-worker "felt intimidated and forced into signing a write up by [Plaintiff]."); *id.* at p. 31 (another co-worker complained that Plaintiff "is only fussing at the white employees, not black employees."); *id.* at p. 35 (another co-worker stated "[t]here is no communication from [Plaintiff]" and described Plaintiff's conduct as "unprofessional and uncalled for."); *id.* p. 45 (where Plaintiff's manager notes that "[s]everal staff members from CCU have voiced concerns related to the lack of team work, communication and positive atmosphere on the days that [Plaintiff] is charge nurse."). These complaints resulted in at least two written reprimands from Defendant, both of which were issued only months prior to Plaintiff's discharge on June 1, 2021. [Doc. 47, pp. 8–9].

Much of Plaintiff's Response to Defendant's Statement of Material Facts argues that each complaint is "hearsay[,] which should be stricken and not considered" pursuant to Fed. R. Evid. 802. [Doc. 50-5, ¶¶ 30–69]. These complaints, however, are not offered for their truth, but as the basis for Defendant's employment decision. *See Coleman v. Jason Pharms.,* 540 F. App'x 302, 306 (5th Cir. 2013) (complaints from plaintiff's coworkers admissible when used to prove that defendant "relied upon those [complaints] in making the decision to terminate [plaintiff]."); *Brauninger v. Motes,* 260 F. App'x. 634, 636–37 (5th Cir.2007).

this stage of the analysis, a court must consider "numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.* at 1002. To survive a motion for summary judgment, a plaintiff must show a "conflict in substantial evidence" on this issue; temporal proximity, standing alone, is insufficient to establish an issue of fact as to pretext.[15] *Id.*; *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 487 (5th Cir. 2008).

All told, even in a light most favorable to Plaintiff, the record does not support that Plaintiff suffered an act of retaliation. Other than the three-month temporal proximity between Plaintiff's March 1, 2021, email and her termination, there are no facts supporting a retaliatory motive by IMC.[16] *See Myers v. Crestone Int'l, LLC,* 121 F. App'x 25, 28 (summary judgment warranted where "[t]he only evidence of a connection between [plaintiff's] firing and her [protected] activity . . . is the timing[.]")

---

[15]    "Substantial evidence" is evidence of "such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Moore v. Mancuso,* 2015 WL 176644, at *6 (W.D. La. Jan. 13, 2015) (citing *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir.1996)).

[16]    As noted in her Opposition, Plaintiff received several positive performance reviews from her supervisors in the years prior to 2021. *See* [Doc. 48, pp. 7, 17, 25, 42]. For retaliation claims, the Court recognizes that a plaintiff may establish pretext by demonstrating "highly positive performance reviews up until the [protected activity], and then … a sharp decline in treatment immediately after the protected conduct occurred." *See United States ex rel King v. Solvay Pharms., Inc.,* 871 F.3d 318, 334 (5th Cir. 2017) (citing *Khalfani v. Balfour Beatty Communities, L.L.C.*, 595 F. App'x 363, 366 (5th Cir. 2014) (per curiam)). Here, however, Plaintiff was the subject of multiple behavioral complaints unrelated to her work duties as early as August 2019 – more than a year before she filed a complaint with Defendant's Human Resources Manager. [Doc. 40-4, pp. 28–40]. These behavioral problems, which elicited both complaints from her co-workers and reprimands from her supervisors, escalated in the months prior to her termination. [Doc. 40-4, pp. 28–53].

(5th Cir. 2005); *Rosette v. PNK (Baton Rouge) P'ship,* 2018 WL 3041190, at *7 (M.D. La. June 19, 2018) ("Although a gap of four months may be sufficient to state a *prima facie* case of employment discrimination, the lack of any specific, articulable suspicious circumstances in the intervening four months militates against a finding of pretext.") (internal citations omitted).  Summary judgment on Plaintiff's retaliation claim is therefore warranted.

## VI.   <u>Race Discrimination</u>

Lastly, Defendant seeks summary judgment as to Plaintiff's race discrimination claims arising from her discharge on June 1, 2021.  Using only circumstantial evidence, a plaintiff makes a *prima facie* showing of race discrimination by establishing that: (i) she is a member of a protected group; (ii) she was qualified for the position held; (iii) she suffered some adverse employment action by the employer; and (iv) she was either replaced by someone outside her protected group or was treated less favorably than similarly situated employees outside the protected group.  *Hardison v. Skinner*, 2022 WL 2668514, at *2 (5th Cir. July 11, 2022); *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005).  Here, Plaintiff seeks to establish her prima facie case of discrimination by showing that she was treated less favorably than a similarly situated IMC employee.

### A. <u>Disparate Treatment</u>

A plaintiff may carry the fourth element of her *prima facie* race discrimination claim by "point[ing] to a comparator who was similarly situated" but was "treated more favorably than the plaintiff under nearly identical circumstances."  *Ernst v. Methodist Hosp. Sys.,* 1 F.4th 333, 340 (5th Cir. 2021) (citing *Rogers v. Pearland*

*Indep. Sch. Dist.*, 827 F.3d 403, 410 (5th Cir. 2016)).  As between the plaintiff and the comparator, "nearly identical circumstances" exist when: (i) both employees have the same job responsibilities; (ii) both employees have "essentially comparable violation histories;" and (iii) both employees either shared the same supervisor or had their employment status determined by the same person.  *Hardison v. Skinner,* 2022 WL 2668514, at *3 (5th Cir. July 11, 2022).  Critically, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* (citing *Lee  v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)).

As a comparator, Plaintiff has offered Chuck Rozas ("Rozas"), a white Medical-Surgical Charge Nurse who worked with Plaintiff during the term of her employment with Defendant. [Doc.  47, pp. 25–27].  The record, however, indicates that Rozas and Plaintiff do not share "comparable violation histories."  Rozas was subject to a suspension after receiving two written reprimands in June 2018.[17]  [Doc. 50-3]. In contrast, Plaintiff was terminated after receiving two written reprimands in addition to *numerous* documented verbal complaints throughout the last two years of her employment with Defendant.  [Doc. 40-4, pp. 28–53]; [Doc. 48-1, p. 62].  Because Rozas' disciplinary record differs markedly from Plaintiff's, Rozas cannot be considered a valid comparator, which necessarily means that Plaintiff cannot

---

[17]    On June 9, 2018, Rozas received a written reprimand for acting contrary to the decision of a supervisor.  *See* [Doc. 50-3].  Rozas had previously received a written reprimand for falling asleep at the nurse's station, and Defendant issued him a one-day suspension on June 19, 2018.  *Id.*  Plaintiff has not identified evidence showing that Rozas was the subject of any informal or verbal complaints.  *See generally* [Doc. 47].

establish the fourth element of her *prima facie* case.  *See Turner v. Kansas City S. Ry. Co.,* 675 F.3d 887, 893 (5th Cir. 2012), *as revised* (June 22, 2012) ("[I]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts* for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis."); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 261 (5th Cir. 2009) ("Each employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable.").  Plaintiff has thus failed to make the required showing and summary judgment is appropriate as to her race discrimination claim.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's MOTION FOR SUMMARY JUDGMENT [Doc. 40] is GRANTED, and that all claims against Defendant, Iberia Parish Hospital Service District No. 1, are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 27th day of January 2023.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE